Solaria Corporation v. United States I think we're ready Mr. Holmes whenever you are. Thank you very much. Good morning. Please report. This case is here on an appeal of a motion to dismiss in the Court of Federal Claims. There was no discovery and there was no trial and the case was dismissed. We claim that there should have been both. The court below, if you look at page 12 of their decision, it's also page 12 in the appendix, the court actually weighed the evidence. It didn't engage in the standard motion to dismiss practice of looking to see, has there been pleadings that are substantial that rise above the speculative level. But didn't the agreement itself give them the right to terminate the agreement for any reason? And they had a reason. I disagree with that, Your Honor, but I think you're right in the sense that there is language in the agreement that says under certain circumstances it can be terminated. And that's the factual dispute that still remains that we want to try, is whether it was appropriate to be terminated given all the circumstances that had taken place. I don't understand how we could second guess that. The commitment letter says OPIC in its sole judgment is not satisfied with the results of its due diligence investigation. In its sole judgment. I don't get to replace my judgment for their judgment, your judgment. I don't have to decide whether their judgment was even reasonable. In their sole judgment, if they're not satisfied, and they proffered reasons which you have not disputed for why they were dissatisfied. Maybe those reasons wouldn't have been enough for me to cause me not to go forward with the commitment, or you, or maybe not even a reasonable person. But it's not a reasonable person. It's up to them in their sole judgment. That was the commitment letter that you received that has been deemed a contract in this case and not disputed to be a contract. I have two answers to that, your honor. One is that when you examine and get into the facts, you see that the reasons we contend, that the reasons why the loan commitment was terminated are inappropriate and wrong. And we want an opportunity to... But how is that sufficient? What did you raise in your complaint to substantiate that or to point that? I mean, a bald assertion, no, they're lying. And the real reason was that there was this other political thing going on and they got scared. We did more than that, your honor. We did two things, two principal things. In the first hundred allegations or so in the complaint, we go through all the things that happened for the year after the commitment letter was signed. And during that year, the agency was prodding, pushing, requiring the company to go forward, all at the same time telling them this loan is going to be approved, there's not a problem, don't worry about it, we are going to give you the money. And as a matter of fact, for the last year, we'll let you look back and pull that year's worth of money into the loan. There is no doubt they misled your company over and over. They behaved badly. There's no doubt. I guarantee you this is going to be approved. But he had no actual authority and that didn't constitute a commitment on behalf of the government. And in government contracts, apparent authority is not enough. And him giving you his personal commitment to approving it or whatever or seeing it through. And then the information from the due diligence came after that. It came after that occurred. There's no dispute in the timeline of this record that was presented below. There's no dispute over the timeline. The due diligence information that they acquired came after all of those other facts had occurred. And that is what they based, clearly and unequivocally, their assertion is they based their judgment on that. And I mean, I don't know. I just don't understand how you've made a case in your claim in light of the undisputed facts of record. I'm not saying you don't have your own suspicions about why they did it, but the timeline is what the timeline is. The guy who, I think the client got the short end of the stick. There's no doubt about it. But I don't know that there's a legal basis that binds them. We think there is, and we think we've pled it in the sense that we want to prove that that contract, that loan commitment that the court below found was a contract, was in fact breached by the agency's actions. And just the bald right to terminate something doesn't mean that you can terminate it and it doesn't matter that you caused this situation, you created the problem, you did this, you did that. But I haven't heard you use the words material adverse change. Is it your view that that is the question of fact that you should have been allowed to pursue? Correct, Your Honor. And we don't think there was a material adverse change. We think there were things that changed, obviously, because things were going on. The market was changing. It was a situation where the company had done everything that it could. It responded to every direction from the agency in terms of doing something different, including spending $30 million of its own money. And then it was cut off. But there was a material adverse change, wasn't there? There were things going on that we'd like to debate whether they were material or not. Yes, Your Honor. There were things going on. There's no doubt about that. But, I mean, doesn't the contract also, I mean, the material adverse change is B and at the bottom it says or in its sole judgment is not satisfied with due diligence. It doesn't even have to be they're not satisfied because of a material adverse change. That is one reason they can pull out. But it seems like the last sentence of that commitment letter that is at issue in this dispute is enormously broad. It is broad. That's the contract you had. That's the only contract that you had. The vice president's statement that I personally guarantee this loan will be completed doesn't mean anything. I mean, that's just a statement of a person. It doesn't bind the government to anything. I'm not sure of that, Your Honor. I am as a matter of law. I'm sure of it. The fact that the vice president told you that he thought this commitment letter was going to result in a contract does not bind the government to the contract. So, as a result of that, I don't think you've stated a claim. I don't see it. I would like to have discovery. I'm sure you'd love to, but you haven't stated a claim. I would like to prove that that person had actual authority to make commitments. You didn't even allege that. You didn't even allege that in your complaint. That's not one of your allegations before us. We do have an implied contract. You can't have an actual contract and an implied contract. The law is clear on that. You have an actual contract. You cannot have both. That's not a basis for creating a claim for you. The situation cannot exist where an agency can push a contractor to spend its money for a year and then for any reason, whether it's the right reason or the wrong reason, but any reason, end that and say you have to eat that $30 million that you spent. That can't be right. I don't understand. You were alleging a nefarious motive for what they did, right? Correct. One of the questions is whether or not those are just bald assertions that you get to say, I think this may have happened. I'm speculating, but let me have discovery so I can figure out whether it's true or not. I mean, one of the aspects of that was the timing that you put forward. Well, even Iqbal, we involved a timing matter, and the court said timing by itself is not sufficient. Temporal coincidence or circumstances doesn't do it for you. Then you talk about publicizing, refusing to publicize this matter. Is that a sufficient basis for you to – I mean, I'm not seeing what in your complaint has alleged that gets you balled back by the Iqbal family. Your Honor is correct about what you've just said. Those are the issues that, for the nefarious reason point. But in addition, a year took place where the agency was urging the contractor to work, to do things, to prepare for the loan, and to look back and get the loan money when they got done. And I'm saying that that also gives rise to – But I guess I don't want to – we're obviously not going to try this case here, but it's undisputed that there was an intervening event. You come in at the last minute and you say, because of market circumstances, et cetera, we've got a different business plan now that we're going forward with. That was a major – well, it was a change, right, that was coming from your end, not from the government's end, right? Your Honor, with respect, I think there's two sides to that story. The materials in our reply brief show that it was the government that set that in action and asked – sure, there were market changes going on. There always are. But the government asked for the deal to be redone from a project deal to a corporate-wide guarantee so they had more security. I think that was the government that did that, and there's documents quoted in the report. I understand how that affects the fact that you came in at the 11th hour and said things have changed in the market internationally in terms of demand, et cetera, so we've got a different business plan, which go forward. What I'm saying is the government put that in action by its request that we do different things, that we give them a corporate guarantee instead of an individual guarantee. And look what we're doing here, too. We're all arguing and debating what the evidence is as opposed to whether this is an appropriate motion to dismiss. That's a problem, I think. Can I say one additional thing, too? When I was looking at Iqbal yesterday and reading Ashcraft v. Iqbal, I saw in the very last paragraph the Supreme Court, after saying you haven't met the speculative standard, we're going to dismiss the case. They asked the Court of Appeals to remand the case to the district court so that the district court could make a decision as to whether leave to amend should be granted. Now, I know I was surprised when I read that, but I would think that's an appropriate situation for the court to consider here. Send the case back. Let us do the complaint again, and let's see if we get there and solve this problem. Thank you. We'll reserve the remainder of your time. As counsel for the appellant pointed out, the lower court dismissed the case on failure of the complaint to state a cause of action. The decision should be affirmed for the reasons your honors have stated in your questions to the appellant's lawyer. Under Iqbal, and I quote from Iqbal, Rule 8 of the federal rules marks a notable and generous departure from the hyper-technical code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. And your honors are correct that this complaint that was filed makes this allegation of nefarious conduct by OPIC as a conclusory statement that is not consistent with the timeline. There are no plausible facts that are stated in the complaint that would allow a reasonable trier of fact to reach that conclusory conclusion based on facts. And under the rules of law established by Iqbal and Velvet Lannik and in this court by Bill Herring. So what more, just speculating now, what more would you need in these circumstances? You don't have to be precise. If an insider who was turning state's evidence, so to speak, came and said that he was in a meeting of the investment committee and they said they were about to grant it, but they heard that Mr. Romney running for president in front of the Solyndra factory arguing about how corrupt that administration was and so we don't think we should get involved in energy loans. That would be evidence that could be stated in the complaint of supporting nefarious intention. Or similar types of documents that could be leaked or some historical data regarding a coincidence between reversing intentions to give energy loans and political situations. But all that's in the complaint, as I think your honors have perceptively observed from the complaint, is this notion that somehow because over the general course of 2011-2012 this fellow company that was in the energy business that had a loan from the Department of Energy failed is reason to believe that OPIC had a nefarious reason to disestablish this loan. It's simply violative of the rules laid down by Ashcroft and Bell Atlantic. And you're right, much of the evidence is irrelevant evidence and non-admissible. Some of it was pursuant to a motion to expand the record, which your honors have already denied. The entire reply brief is based on that evidence and so really isn't even in the record. Much of what he said today is based on evidence that also wasn't part of the complaint or attached to the complaint. So you really technically shouldn't really be involved in the facts. But if you do get involved in those facts, you'll see that you're correct that much of the approvals that OPIC gave initially before the markets changed and before they found out from the due diligence that the way they had originally thought it could be structured, it couldn't be structured that way and result in a reasonable risk that the loan would be paid back. Those facts show us not that OPIC was buckling to anything political, but in fact stood up and looked at the merits and said tentatively we're going to do this. That is, Solyndra went bankrupt in June of 2011 and the loan was granted, or the commitment was entered into in August of 2011 when Solyndra was well known. The Tea Party representatives were already making noises about the Solyndra loan as early as January of 2011 when the loan was restructured. That was all known by OPIC when they entered into the commitment letter. So aside from the fact that it's the plaintiff's obligation to state facts, if you look at what's in the record, not only are they not stated facts that support them, but the facts they have stated support OPIC. Because OPIC is clearly a government company that stood up to political noise and said on the merits we think we can enter the commitment letter, but we have to make sure the markets are good. We have to look at the engineering. We have to do due diligence and we have to have absolute discretion because these are by definition high risk loans to withdraw if for any reason we in our sole discretion decide we don't want to go forward with it. I think your honors are also correct in pointing out that Solaria was well aware of the draconian conditions from one view in the commitment letter. They knew they had to spend money to get the loan. They knew that it might not work out and they knew that the risk was theirs because it says that in the commitment letter. So in short, we feel the judge of the court of federal claims acted pursuant to the rules regarding when you can get beyond the complaint stage and deciding that you couldn't allow it in this case and that therefore her decision that they had failed to state a cost of action should be affirmed. Thank you, your honors. Thank you. Okay, thank you. We thank both sides and the case is submitted.